498 So.2d 498 (1986)
Bobbie SHOOK, Appellant,
v.
ALLSTATE INSURANCE COMPANY, Appellee.
No. 85-1943.
District Court of Appeal of Florida, Fourth District.
November 12, 1986.
Rehearing and Rehearing Denied December 24, 1986.
Marcia E. Levine of Fazio, Dawson & DiSalvo, Fort Lauderdale, for appellant.
John R. Hargrove of Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey, Fort Lauderdale, for appellee.
Rehearing and Rehearing En banc Denied December 24, 1986.
DELL, Judge.
Appellant seeks reversal of an amended final judgment that denied her claim for damages arising out of appellee's alleged breach of contract and bad faith.
Appellant suffered personal injuries in an automobile accident caused by the negligence of Cathy Stout. Appellee had issued an automobile insurance policy with bodily injury limits of $10,000 per person to Stout. Appellant made demand for payment of the $10,000 policy limit, but appellee denied coverage, claiming Stout's policy had lapsed for nonpayment of premiums. Appellant filed suit against Stout seeking compensatory and punitive damages for her personal injuries. Appellee continued to deny coverage. Stout retained her own counsel, and thereafter Stout and appellant, upon advice of counsel, entered into a settlement agreement. In the settlement agreement, Stout acknowledged her liability to appellant, and agreed that appellant was entitled to compensatory damages in the amount of $350,000. Appellant agreed:
[T]o forego payment by defendant, Cathy Stout, of the settlement sum of $350,000 and agrees not to execute against defendant or otherwise attempt to obtain payment from defendant, personally, for the amount owing. If plaintiff is unsuccessful in her attempt to collect this settlement from Allstate Insurance Company, then defendant shall be in no way obligated to pay this settlement figure.
In exchange for appellant's promise not to execute against her, Stout assigned her right of action against appellee. Following the execution of the agreement, appellant offered to settle with appellee for its policy limits of $10,000 conditioned upon appellee's agreement to do so within thirty days. Appellee rejected the offer. Appellant filed suit alleging breach of contract and bad faith. She sought to recover the agreed settlement amount of $350,000, her own attorney's fees and costs, Stout's attorney's *499 fees and costs in defending the prior personal injury action, and Stout's collision loss. The trial court entered a final judgment that awarded appellant the attorney's fees and costs incurred by Stout, the amount of Stout's collision claim, and appellant's attorney's fees and costs. The trial court ruled as a matter of law that appellant could not recover any portion of the $350,000 settlement from appellee because Stout was not liable to appellant for the agreed amount of the settlement.
Appellant contends that where an insured obtains her own release from an injured party, after the insured has been abandoned by her insurer, the release does not relieve the insurer of liability for the amount of the settlement. She also contends that the liability of an insurer who wrongfully refuses to defend and acts in bad faith is not restricted to its policy limits.
Appellee claims that Fidelity and Casualty Co. of New York v. Cope, 462 So.2d 459 (Fla. 1985) and Kelly v. Williams, 411 So.2d 902 (Fla. 5th DCA 1982) control this case. In Kelly, the injured plaintiff attempted to enter into a stipulation that provided the plaintiff with a recovery of $50,000 from Allstate Insurance Company and at the same time preserved the plaintiff's right to pursue a bad faith action against Allstate. Allstate joined in the agreement and paid the sum of $50,000. The plaintiff agreed to execute and to deliver a satisfaction of judgment to Allstate's insured, regardless of the outcome of any bad faith action against Allstate. The trial court dismissed the plaintiff's suit against Allstate for bad faith, and the Fifth District Court of Appeal affirmed, concluding that the stipulation completely safeguarded the insured and therefore completely discharged the insurer's duty to its insured.
In Cope, Fidelity and Casualty Co. of New York had applicable policy limits of $20,000 and Hartford Insurance Company had applicable limits of $10,000. Fidelity offered to tender its limits of $20,000 if Cope and counsel for the insureds could work out a settlement satisfactory to all parties concerned. They did not and Cope filed suit. A jury awarded Cope's estate $100,000. Fidelity and Hartford each paid $10,000 to the estate. Cope then brought a bad faith claim against Hartford, and Hartford settled for $50,000 in return for Cope's execution of a release and satisfaction of judgment in favor of Hartford and the insureds. Fidelity was not named in the release, and Cope did not intend to release Fidelity from an excess claim. Cope filed suit against Fidelity for the $30,000 remaining on the final judgment. The district court affirmed the trial court's award of damages for Fidelity's bad faith. The supreme court reversed and held that if an excess judgment has been satisfied, absent an assignment of that cause of action prior to the satisfaction, a third party cannot maintain an action for a breach of duty between an insurer and its insured.
We find the facts of the case before us distinguishable from those in Cope and Kelly. In both Cope and Kelly the insurance carriers fulfilled their duty to defend, tendered their insurance limits, and the plaintiffs executed stipulations exonerating the insureds from liability before pursuing their actions for bad faith. We are not unmindful of our decision in Florida Physicians Insurance Reciprocal v. Avila, 473 So.2d 756 (Fla. 4th DCA 1985). In Avila, we applied Cope and reversed a judgment in the amount of $250,000 in favor of the insured, based upon a jury verdict that found the insurer had acted in bad faith. In Avila, the insured assigned his bad faith cause of action before being released from liability for alleged malpractice. The malpractice claim was settled without any payment by Avila. Thereafter Avila reacquired the assignment of his right to maintain a bad faith action against his insurer. We recognized that the assignee of Avila's claim would have had an action against the insurer for bad faith. However, we concluded that the reassignment to Avila after he had been released from liability for the malpractice claim left him without a loss for which he could claim damages. In Avila we distinguished the case of Steil v. Florida Physicians' Insurance Reciprocal, *500 448 So.2d 589 (Fla. 2d DCA 1984), but recognized its applicability to a case where the insurer had either a clear duty to defend and refused, or, having undertaken the defense, wrongfully refused to accept an offer of settlement within the policy limits.
In Steil, the defendant physician's insurance carrier denied coverage and refused to provide him with a defense. Steil and the physician entered into a written stipulation and agreement for settlement of all claims. The physician acknowledged his obligation to Steil for $35,000 in damages, and also gave a written assignment of all his rights and causes of action against the carrier as they related to Steil's claim. Steil released the physician from further liability, and dismissed her claim for malpractice against him. Steil then filed suit against the carrier for bad faith and against the physician for a declaratory judgment interpreting the settlement agreement. The Second District Court of Appeal affirmed the dismissal of the suit against the physician and reversed the order of dismissal against the carrier.
In the action against the carrier, Steil relied upon the general rule that if an insurer wrongfully refuses to defend, the insured is entitled to make a reasonable settlement without requiring the suit to be carried to judgment. The carrier asserted a "no action" clause in the policy, and took the position that since the physician had neither paid nor become obligated to pay any money in satisfaction of Steil's claim, it could not be held responsible when the physician had been discharged from liability without making any payment. The Second District rejected the carrier's argument, and said:
By refusing to defend Steil's claim, the carrier left Walker to his own devices to protect himself in the best way possible. If the refusal was improper, we do not believe that the carrier can now rely upon the "no action" clause to defeat a claim predicated upon the insured's settlement. Moreover, we hold that the carrier was not necessarily exonerated because Walker was able to obtain his own discharge from liability in the course of reaching an agreement with Steil. Clearly, the intent of Steil and Walker was not to release the carrier.
448 So.2d at 591.
We believe the facts before us fall within the Second District Court of Appeal's decision in Steil. Here the carrier refused to defend the insured, and appellant entered into settlement negotiations that resulted in an assignment of the insured's claims against its carrier to appellant. The circumstances surrounding the stipulation and agreement for settlement of the claim, and the language of the document demonstrate that it was not the intent of appellant or Stout to release any claims that they might have against appellee.
In Steil, the court pointed out that an issue remained concerning the question of coverage. Here, the trial court severed the issues of coverage and damages, and a jury determined that coverage existed for appellant's claim. The only remaining question is the amount of damage. In Steil the court held:
[T]hat in a case such as this, a settlement may not be enforced against the carrier if it is unreasonable in amount or tainted by bad faith. Moreover, because the circumstances surrounding the settlement will be better known to the party seeking to enforce it, he should assume the burden of initially going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, even though the ultimate burden of proof will rest upon the carrier.
448 So.2d at 592.
Accordingly, we reverse that part of the amended final judgment that denied recovery to appellant in the amount of $350,000, and remand this case to the trial court for trial on the issue of the reasonableness of the settlement and the bad faith, vel non, of appellee. We affirm that part of the final judgment that awarded appellant the amount of attorney's fees and costs incurred by Stout in the defense of the underlying *501 claim for personal injury, and the amount of Stout's collision loss. The trial court's reservation of jurisdiction to award appellant attorney's fees and costs for prosecution of her action to enforce the settlement and for bad faith is likewise affirmed.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
HERSEY, C.J., and ANSTEAD, J., concur.