DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

BENJAMIN D. MARKUSON; ERIK
SATERBO; and STEPHEN SATERBO,

Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation; CRAWFORD LAW GROUP, P.A.,
a Florida corporation; and LARRY WALKER,

Appellees.

No. 2D21-2443

_____

February 28, 2024

BY ORDER OF THE COURT:

Upon consideration of Appellants' motion for rehearing, rehearing en banc, and/or clarification filed September 29, 2023,

IT IS SO ORDERED that Appellants' motion for rehearing is granted. The prior opinion issued on September 15, 2023, is withdrawn, and the following opinion is issued therefor. We deny Appellants' motion for rehearing en banc and/or clarification. No further motions for rehearing, rehearing en banc, or clarification will be considered.

I HEREBY CERTIFY THE FOREGOING IS A TRUE COPY OF THE ORIGINAL COURT ORDER.


MARY ELIZABETH KUENZEL
CLERK

# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

———————————————

BENJAMIN D. MARKUSON; ERIK
SATERBO; and STEPHEN SATERBO,

Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
corporation; CRAWFORD LAW GROUP, P.A.,
a Florida corporation; and LARRY WALKER,

Appellees.

No. 2D21-2443

———————————————

February 28, 2024

Appeal from the Circuit Court for Hillsborough County; Emily A. Peacock, Judge.

Patrick J. McNamara and David M. Caldevilla of de la Parte & Gilbert, P.A., Tampa; and Daniel J. McBreen and Eric D. Nowak of McBreen & Nowak, P.A., Tampa, for Appellant Benjamin D. Markuson.

Joshua I. Gornitsky of Searles, Sheppard & Gornitsky, PLLC, Ft. Lauderdale, for Appellants Erik and Stephen Saterbo.

Scott E. Damon, John W. Weihmuller, and Mihaela Cabulea of Butler Weihmuller Katz Craig, LLP, Tampa, for Appellee State Farm Mutual Automobile Insurance Company.

No appearance for remaining Appellees.

PER CURIAM.

Appellants, Benjamin Markuson and Erik and Stephen Saterbo, appeal the entry of a partial final summary judgment as to counts I, III, IV, and V entered against them and in favor of State Farm Mutual Automobile Insurance Company. The final summary judgment was based upon the trial court's conclusion that State Farm was under no legal duty to its insured to accept any or all of the three proposals for settlement made by Mr. Markuson. After consideration of the issue presented, we affirm in part, reverse in part, and remand for further proceedings.

## I. Factual Background

The underlying case arises out of a 2006 automobile accident involving Erik Saterbo and Mr. Markuson. At the time of the accident, Erik was operating a vehicle owned by his father, Stephen. Due to his injuries, Mr. Markuson sued the Saterbos on September 10, 2008. The Saterbos had an insurance policy with State Farm which provided policy limits of $300,000.00 against liability for bodily injuries sustained in an auto accident. And on January 15, 2009, State Farm authorized the Crawford Law Group—the firm retained by State Farm to defend the Saterbos—to make a settlement offer to Mr. Markuson to resolve his case for the policy limits. The offer was not accepted.

Instead, in 2011 and 2012, Mr. Markuson issued two settlement offers to State Farm's insureds (the first, oral; the second, written) that were largely indistinguishable in their terms. In pertinent part, Mr. Markuson's offer would have required State Farm to (1) tender the $300,000 policy limits to Mr. Markuson; (2) authorize State Farm's

2

insureds to enter into a consent judgment in the amount of $1.9 million that would not be recorded or enforced against the Saterbos; and (3) authorize the Saterbos to assign their rights in any claims against their insurance agent to Mr. Markuson. In return, Mr. Markuson would execute a release of all his claims against the Saterbos and a satisfaction of the aforementioned consent judgment.[1] The proposal made no indication that State Farm would be released from any bad faith liability. State Farm declined to accept these proposals, and the case continued to trial. Following a jury trial, Mr. Markuson recovered a total of $3,084,074.00, a sum considerably greater than the coverage afforded.

The settlement offers by Mr. Markuson formed the basis of a bad faith complaint against State Farm, which brings us to the issue on appeal. Mr. Markuson and the Saterbos brought an amended seven-count complaint against State Farm, Crawford Law Group, P.A., and Larry Walker—the Saterbos' insurance agent. Count I alleged common law bad faith against State Farm by the Saterbos, count III alleged common law bad faith against State Farm by Mr. Markuson, count IV alleged statutory bad faith against State Farm by the Saterbos, and count V alleged statutory bad faith against State Farm by Mr. Markuson.[2] The alleged bad faith occurred when State Farm failed to

---

[1] The terms of the release in the 2012 offer stated that "[w]ithin three days of executing this Agreement, Markuson shall deliver to counsel for Erik and Stephen Saterbo and counsel for Geico the release of claims and satisfaction of judgment."

Mr. Markuson also issued a third settlement proposal on May 18, 2012, this one in the form of a more straight-forward proposal for settlement under section 768.79, Florida Statutes (2012), requiring payment of $1.5 million (five times the policy limit) within twenty days.

[2] Count II alleged professional negligence against Crawford Law Group, P.A., by the Saterbos, and count VI alleged negligence against Mr.

settle the personal injury action by declining three of Mr. Markuson's proposals for settlement. State Farm moved for summary judgment on these counts, asserting that it did not act in bad faith because the proposals for settlement included consent judgments above the policy limits and that pursuant to *Kropilak v. 21st Century Insurance Co.*, 806 F.3d 1062 (11th Cir. 2015), it owed no duty to its insured "to enter into a consent judgment in excess of the limits of its policy." To the extent the bad faith claims rested "on some other basis," it did not seek a summary judgment. And we note that count I of the amended complaint alleged, among other things, that State Farm (1) failed to exercise good faith in the investigation, evaluation, and negotiation of the claim; (2) failed to handle the claim honestly and with due regard for its insured; and (3) failed to communicate with and advise the insureds.[3]

The trial court's written order granting partial summary judgment for State Farm as to counts I, III, IV, and V states that pursuant to *Kropilak*, State Farm had no duty to enter into a consent judgment that was in excess of the policy limits "as a matter of law." The trial court found that "each of the three proposals exposed State Farm to extracontractual claims or payment" and that nothing suggested State Farm would be released by entering into the proposed consent

---

Walker by Mr. Markuson as assignee of the Saterbos. Count VII sought a declaratory judgment against State Farm.

[3] Florida Rule of Civil Procedure 1.110(b) requires a pleader to set forth "a short and plain statement of the ultimate facts" that support the claim for relief. "In addition to the jurisdictional statement and the relief sought, the complaint must contain a plain statement of ultimate facts establishing entitlement to relief." *Pratus v. City of Naples*, 807 So. 2d 795, 796 (Fla. 2d DCA 2002). The amended complaint sets forth the issues to be resolved; it does not identify the entirety of the evidence a party may adduce to establish its case.

judgments. It further found that State Farm never withdrew its offer of the policy limits. Thus, the trial court determined that "State Farm did not act in bad faith when it did not agree to or negotiate with respect to any of the three proposals."

## II. Discussion

In *Kropilak,* the Eleventh Circuit reviewed an order granting summary judgment in favor of the insurer on the insured's claim that it acted in bad faith. 806 F.3d at 1063-64. The question before the court was "whether the District Court erred in withholding evidence from the jury as a result of its grant of a motion *in limine* and thus ruling as a matter of law that the insurer had no duty to enter into a consent judgment in excess of the policy limits." *Id.* at 1064. In affirming the district court's decision, the Eleventh Circuit essentially determined that, in effect, there was no significant difference between a *Cunningham* agreement and a consent judgment proposal in excess of the policy limits. The Eleventh Circuit thus held that "an insurer owes no duty under Florida law to enter into a so-called *Cunningham* agreement and likewise owes no duty to its insured to enter into a consent judgment in excess of the limits of its policy." *Id.* at 1070.

The holding that "an insurer owes no duty to its insured to enter into a so-called *Cunningham* agreement" relies upon the Florida Supreme Court's holding in *Cunningham v. Standard Guaranty Insurance Co.*, 630 So. 2d 179 (Fla. 1994). In *Cunningham,* the parties "entered into an agreement to try the bad-faith action before trying the underlying negligence claim. The parties further stipulated that if no bad faith was found, the Cunninghams' claims would be settled for the policy limits, and [the insured] would not be exposed to an excess judgment." *Id.* at 180. Ordinarily, to commence a bad faith action against a liability

5

insurer, a party must first "obtain a judgment against the insured in excess of the policy limits." *Id.* at 181. However, the parties' stipulation voluntarily eliminated this procedural prerequisite. Thus, "[t]he stipulation was the functional equivalent of an excess judgment." *Id.* at 182; *see also Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 899 (Fla. 2010) ("*Cunningham* agreements have been held by this Court to be the 'functional equivalent' of an excess judgment." (citing *Cunningham*, 630 So. 2d at 182)); *United Servs. Auto. Ass'n v. Jennings*, 731 So. 2d 1258, 1259 (Fla. 1999).

Here, the thrust of the bad faith case turns on State Farm's refusal to enter into the proposals for settlement. In Mr. Markuson and the Saterbos' view, State Farm had a duty to authorize its insureds to consent to a judgment more than five times the amount of the policy limit and to do so without releasing State Farm from liability. But as the Eleventh Circuit observed, an insurer has no duty "to enter into a consent judgment in excess of the limits of its policy." *Kropilak*, 806 F.3d at 1070. And an insurer does not ordinarily have a duty to pay a claim in excess of a policy's limit. *See Bethel v. Sec. Nat'l Ins. Co.*, 949 So. 2d 219, 222 (Fla. 3d DCA 2006); *Mid-Continent Cas. Co. v. Basdeo,* 742 F. Supp. 2d 1293, 1321 (S.D. Fla. 2010); *see also* § 624.155(4)(a), Fla. Stat. (2023) ("An action for bad faith involving a liability insurance claim . . . shall not lie if the insurer tenders the lesser of the policy limits or the amount demanded by the claimant within 90 days after receiving actual notice of a claim . . . .").

Mr. Markuson and the Saterbos, however, assert that the controlling case law in this case is *Fidelity & Casualty Co. of New York v. Cope,* 462 So. 2d 459 (Fla. 1985), and *Wachovia Insurance Services, Inc. v. Toomey*, 994 So. 2d 980 (Fla. 2008). The question in *Cope* was

6

whether "an injured party who has secured a judgment in excess of a tortfeasor's insurance coverage can maintain a 'bad faith' excess claim against the insurer when the injured party has executed a release of his claims against the tortfeasor who has satisfied the judgment." 462 So. 2d at 459. The supreme court held that "absent a prior assignment of the cause of action, once an injured party has released the tortfeasor from all liability, or has satisfied the underlying judgment, no such action may be maintained." *Id.* The court reasoned that no cause of action for bad faith remained because "the insured could not be exposed to any loss or damage from the alleged bad faith of the insurer." *Id.* at 460.

In *Toomey*, two employees received a judgment against their employer after bringing a claim of termination without cause. 994 So. 2d at 982. Because their employer was unable to satisfy the judgment, the parties entered into an agreement where the employer would assign any claim against Wachovia[4] to the employees. *Id.* at 982-83. In exchange, the employees would simultaneously release their employer from all causes of action except for the breach of employment contract. *Id.* at 982. The Florida Supreme Court—extending the "prior assignment" requirement—held that a settlement agreement with a simultaneous assignment and release, such as the one fashioned by the parties before it, is a valid agreement.

We pause here to emphasize that the ultimate question in a bad faith cause of action is whether the insurer breached the duty owed to the insured to make decisions in good faith with proper care and concern

---

[4] Wachovia was the employer's insurance broker. The employer could not satisfy the judgment against it because Wachovia allegedly removed coverage for breach of employment contract claims without the employer's knowledge.

given to the interests of the insured.  Neither *Toomey* nor *Cope* comment on an insured's duty to accept a settlement proposal.  We also note that neither case addresses a factual scenario in which the assignee could hold onto the assignment of rights for a period of time before releasing the assignor.  However, the holding in *Kropilak* is not so expansive as to eliminate other theories of bad faith.  Those theories require analysis under *Boston Old Colony Insurance Co. v. Gutierrez*, 386 So. 2d 783 (Fla. 1980),[5] and its progeny.

_____

[5] Under *Boston Old Colony*, "[a]n insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business."  *Boston Old Colony Ins. Co. v. Gutierrez,* 386 So. 2d 783, 785 (Fla. 1980) (citing *Auto Mut. Indem. Co. v. Shaw*, 184 So. 852 (Fla. 1938)).  This duty arises because "the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement."  *Id.*  The surrender of authority by the insured to the insurer demands the latter make "decisions in good faith and with due regard for the interests of the insured."  *Id.* (citing *Liberty Mut. Co. v. Davis*, 412 F.2d 475 (5th Cir. 1969)).

The insurer's good faith duties "obligate[] the insurer to advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same."  *Id.* (citing *Ging v. Am. Liberty Ins. Co.*, 412 F.2d 115 (5th Cir. 1970)).  Additionally, an insurer must "investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so."  *Id.* (citations omitted).  And in evaluating a claim, "whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard."  *Berges v. Infinity Ins. Co.,* 896 So. 2d 665, 680 (Fla. 2004) (citing *State Farm Mut. Auto. Ins. Co. v. Laforet,* 658 So. 2d 55, 63 (Fla. 1995)).  "Each case is determined on its own facts and ordinarily '[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury.' "  *Id.* (alteration in original) (quoting *Boston Old Colony,* 386 So. 2d at 785).

### III. Conclusion

We conclude that the trial court correctly determined that State Farm had no duty to enter into a consent judgment in excess of the limits of its policy. Having so determined, we hasten to add that our affirmance of the trial court's ruling is limited to the *Kropilak* theory of bad faith the court addressed. The trial court erred by entering a final judgment in favor of State Farm to the extent the Appellants' claims raised other theories of bad faith governed by *Boston Old Colony* and its progeny. For that reason, we must reverse the partial final judgment and remand for further proceedings.

Affirmed in part, reversed in part, and remanded.

CASANUEVA, MORRIS, and LUCAS, JJ., Concur.